**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| SHELLY DEVERS, | Case No. 1:19-cv-1013 |
| Plaintiff, | Cole, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Shelly Devers filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.     Summary of Administrative Record**

In July 2016, Plaintiff filed applications for Disability Insurance Benefits (DIB) alleging a disability onset date of June 14, 2016, due to mental and physical impairments. (Tr. 71, 177). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On September 28, 2018, ALJ Timothy Gates held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 31-65). On November 15, 2018, the ALJ denied Plaintiff's applications in a written decision. (Tr. 15-26). Plaintiff now seeks judicial review of the denial of her application for benefits.

1

On the application date, Plaintiff was 28 years old. (Tr. 70). She reported completing high school and has many unsuccessful attempts at college courses. (Tr. 38, 219). She has past relevant work as an assistant manager, clerk, drive through worker, and temporary factory employee. (Tr. 220).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "T12-L1 right sided disc herniation and right sided canal stenosis of the lumbar spine; obesity; mood disorder; and trauma and stressor-related disorder." (Tr. 17). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a range of sedentary work with the following limitations:

> She can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can sit for up to six hours in an eight-hour day; can stand and walk for up to four hours in an eight-hour day; can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can have occasional exposure to extreme cold, extreme heat, and humidity; and can have no exposure to workplace hazards. Mentally, the claimant can perform simple to moderately complex tasks that do not have strict production requirements; can occasionally interact with supervisors, co-workers, and the general public; and can adapt to a static work environment in which changes are infrequent and explained in advance when they do occur.

(Tr. 20). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that although Plaintiff is unable to perform her past relevant work, Plaintiff could perform other work in the national economy including such jobs as labeler, sorter

2

and inspector. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ failed to provide any legitimate rationale for rejecting the opinions of record. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation

omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits

4

must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's decision is supported by Substantial Evidence

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because his mental RFC assessment was based on an improper evaluation of the medical opinions of record. More specifically, Plaintiff contends that the ALJ provided only illegitimate rationale for rejecting the treating and examining sources of record including LISW Ortega and CNP Smith. (Tr. 23). Furthermore, Plaintiff argues that the ALJ also rejects all of the problematic limitations given by the State agency psychological consultants without good cause thereby making the ALJ's mental RFC determination completely unsupported due to blatant cherry picking and a failure to adequately weigh the medical evidence of record. (Tr. 23).

Here, the record contains the following relevant mental health opinion evidence:

On October 10, 2016, Plaintiff reported to a consultative examination with John S. Reece, Psy.D. (Tr. 468). She reported being fired once due to conflict with her manager. (Tr. 469). Plaintiff had unkempt hair, exhibited some impulsive speech, and had inconsistent eye contact with Dr. Reece. (Tr. 470). Her prevailing mood was mildly anxious, dysphoric, and irritable. (Tr. 470). She reported feeling hopeless, helpless, full of guilt, and worthless, with mood swings always leading to anger. (Tr. 470). Her memory was fair upon testing, and abstraction was adequate. (Tr. 470). Plaintiff indicated some problems comprehending oral instructions, maintaining repetitive tasks due to focus

5

problems, and reported conflicts with supervisors and co-workers. (Tr. 471). Dr. Reece opined that Plaintiff's emotional instability, depression, and anxiety would affect her coping responses to work stress. (Tr. 471).

On October 25, 2016, Sandra Banks, Ph.D., opined that Plaintiff could understand, remember, and carry out simple, and occasionally some more complex, tasks. (Tr. 82). Dr. Banks opined that Plaintiff could sustain work which does not require fast-paced production demands, and given the variable nature of her symptoms, may need occasional flexibility of scheduled tasks and breaks. (Tr. 82). Additionally, Dr. Banks opined that Plaintiff could carry out tasks in a work setting where duties are relatively static and changes can be explained and implemented over time to allow for adjustment. (Tr. 83).

On June 26, 2018, Plaintiff underwent a 1.5-hour clinical interview with Susan Ortega, LISW, and Sue Smith, CNP. (Tr. 935). She reported problems getting along with people and trying to be respectful to others. (Tr. 935). Plaintiff was mildly unkempt and had not showered. (Tr. 936). She would fidget with available objects on the table and interjected on unrelated topics during the meeting. (Tr. 936). When agitated she began to stutter slightly and talk at a rapid pace. (Tr. 936). She also became more circumstantial and tangential when agitated. (Tr. 936). Plaintiff's mood was mildly flattened, anxious, and irritable. (Tr. 936-37). She could only perform digit span up to 2 sets, and could repeat only 3 sets of numbers backwards. (Tr. 938). LCSW Ortega opined mild to moderate limitations in Plaintiff's ability to follow instructions and maintain attention to perform simple, repetitive tasks. (Tr. 940). LISW Ortega noted that Plaintiff demonstrated difficulty maintaining focus and function. (Tr. 940). LISW Ortega also indicated that Plaintiff would

6

have marked to extreme limitations in her abilities to relate to others, including fellow workers and supervisors, and to withstand the stress and pressures associated with day-to-day work activity. (Tr. 940).

Additionally, on March 8, 2017, State Agency reviewing psychologist Cindy Matyi, Ph. D, reviewed the medical record and determined that Plaintiff had mild to moderate work-related limitations due to her mental health. In light of those limitations Dr. Matyi determined that Plaintiff could sustain work that does not require fast-paced production demands. (Tr. 101). Dr. Matyi further opined that given the variable nature of her symptoms, she may need occasional flexibility of scheduled tasks and breaks, within a normal workday/workweek, she can carry out tasks in settings where duties are relatively static and change can be explained and implemented over time to allow for adjustment. (Tr. 101, 102). In addition, Dr. Matyi found Plaintiff able to interact infrequently with co-workers and the general public. (Tr. 102).

In formulating, Plaintiff's mental RFC, the ALJ assigned partial weight to the opinions of the state agency reviewing psychologists, Sandra Banks, Ph.D. and Cindy Matyi Ph.D because of their program familiarity and longitudinal view of the medical evidence of record. (Pl. Br. 16- 17). However, the ALJ found that their opinions were only partially consistent with the record evidence.

The ALJ assigned little weight to the findings of the consultative examiner, Dr. Reece. In this regard, the ALJ noted that Dr. Reece did not provide a function by function assessment of Plaintiff's workplace limitations and simply summarized Plaintiff's statements about her ability to function in past jobs without providing any function by function limitations. (Tr. 23).

7

The ALJ also considered the opinions of record, including the July 2016 opinion rendered by Ortega and Smith. The ALJ assigned little weight to their findings because their opinion is inconsistent with the medical evidence of record. The ALJ further noted that as a therapist and nurse practitioner, Ortega and Smith, are not acceptable medical sources. (Tr. 23). As the ALJ explained, while Ortega and Smith opined that Plaintiff was markedly/extremely limited in relating to others and withstanding the stress and pressures associated with day-to-day work activity, Plaintiff's mental health symptoms improved with medication and she was able to maintain her employment with Family Dollar. Id. The ALJ noted that Plaintiff's physical impairments alone caused her to stop working. ("That's why I stopped working there, not due – just due to that [back problem]") (Tr. 23, referring to Tr. 46).

Plaintiff argues that the ALJ erred in failing to afford controlling weight to the findings of LISW Ortega and CNP Smith. According to Plaintiff, LISW Ortega and CNP Smith provided the only opinion from a treating source and therefore should have been given deference. Plaintiff further argues that their extreme findings were consistent with and supported by the record evidence and the ALJ failed to provide sufficient rationale for his findings. Plaintiff's contentions lack merit.

As noted by the Commissioner, contrary to Plaintiff's assertion, there was no treating source opinion in this case (Pl. Br. 11-17). Although, Plaintiff asserts that Ortega and Smith were "treating sources," under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. Nurse practitioners or

8

social workers are not "acceptable source[s]" whose opinion are entitled to any special weight. See Social Security Ruling 06–03p (opinions from other sources cannot establish medically determinable impairments and are not entitled to controlling weight); *Hosmer v. Comm'r of Soc. Sec.*, 2014 WL 3015733 at *10 (S.D. OH 2014) (opinions from nurse practitioners not entitled to the special deference afforded to opinions from treating medical sources). *See McNamara v. Comm'r of Soc. Sec.*, 623 F. App'x 308, 309 (6th Cir. 2015) ("A nurse practitioner is not an 'acceptable medical source' under the applicable regulations, but rather falls into the category of 'other sources.' ") (citing 20 C.F.R. § 416.913(d)(1)).

Thus, as "other source[s]," Ortega's and Smith's opinion was not subject to any special degree of deference. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016) (stating that "the opinion of a nurse or a nurse practitioner—is entitled to less weight than a physician's opinion because a nurse is not an 'acceptable medical source'"). Notably, ALJs weigh the opinions of "other sources" using the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.*, "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Williamson v. Comm'r of Soc. Sec.*, No. 1:14–cv–731, 2016 WL 255033, at *8 (S.D. Ohio Jan. 20, 2016); *see also* 20 C.F.R. § 404.1527(c). ALJs should "explain the weight given" to such opinions, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Williamson*, at *8.

As noted above, the ALJ found that the extreme limitations opined by Ortega and Smith were inconsistent with the fact that Plaintiff's symptoms improved with medication and she stopped working due to her physical impairments, not her mental health issues. (Tr. 23). In support of this determination, the ALJ cited to treatment notes noting: "increase in consistency of mood stability;" (Tr. 578); "Less irritable since restarting medication" (Tr. 594); "ct reported experience decreased agitation, irritability and anxiety since last session…attributed to change to new prescription medication." (Tr. 717).

Plaintiff also argues that the ALJ ignored or mischaracterized evidence related to Plaintiff's ability to interact socially and that Plaintiff was more limited than what the ALJ determined. Again, as noted by the Commissioner, the ALJ acknowledged that Plaintiff was diagnosed with mood disorder and trauma and stress-related disorder. (Tr. 22). He further noted that Plaintiff reported a number of symptoms related to her mental health, including depressed mood, crying spells, mood swings, anxiety, and suicidal ideation. Id. As such, the ALJ's mental RFC accounted for Plaintiff's social issues and limited Plaintiff to occasionally interacting with her supervisors, coworkers, and the general public. (Tr. 20). The ALJ appropriately evaluated the opinion and provided legally sufficient reasons for discounting the opinion in accordance with 20 C.F.R. § 404.1527(c).

Plaintiff also challenges the ALJ's finding giving partial weight to the opinions of the state agency reviewing psychologists, Sandra Banks, Ph.D. and Cindy Matyi Ph.D. (Pl. Br. 16- 17). The psychologists opined, *inter alia*, that Plaintiff would need flexibility of scheduled tasks and breaks and that supervisory feedback should be presented in a clear and supportive manner. (Tr. 82-83, 101-02). The ALJ however, did not adopt these limitations finding that they were only partially consistent with the record evidence. In so

concluding, the ALJ noted that Plaintiff was able to maintain her employment with Family Dollar and it was physical not mental impairments that caused her to stop working. (Tr. 23). The ALJ further noted that Plaintiff appears to have more social issues with those close to her rather than in the workplace. (Tr. 23)

Plaintiff argues that the ALJ provided "unsupported reasons for discounting the problematic limitations opined by the state agency psychologists." (Doc. 10 at 16). Plaintiff contends that the reasons given by the ALJ are "unsupported", however, Plaintiff does not develop this argument in any meaningful way. Notably, she fails to provide any support from the record or argument that would assist this Court in determining whether Plaintiff was more limited than what the ALJ determined in the RFC. It is not the Court's function to comb through the entire record to develop an argument on Plaintiff's behalf or to take the portions of the record cited by Plaintiff's counsel and attempt to craft an argument that supports the general issues he referenced in the most perfunctory manner. *Gray v. Astrue*, 4:09–CV–01468, 2010 WL 2106200 (N.D.Ohio Mar.31, 2010) report and recommendation adopted sub nom. *Gray v. Comm'r of Soc. Sec.*, 4:09CV1468, 2010 WL 2106196 (N.D.Ohio May 25, 2010) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). *See also Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir.2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal....").

11

More importantly, that ALJ's decision is supported by substantial evidence. As noted above, the ALJ properly considered the medical opinions of record and provided legally sufficient reasons for the weight assigned to each opinion. As noted by the Commissioner, "[d]iscretion is vested in the ALJ to weigh all the evidence, and he did not abuse that discretion in this instance." C*ollins v. Comm'r of Soc. Sec.*, 357 F.App'x 663, 668 (6th Cir. 2009). The ALJ thoroughly examined the record evidence, including Ortega and Diaz's opinion as well as the state agency psychologists' opinions, and reasonably determined that Plaintiff's mental impairments were not disabling. While Plaintiff may disagree with the ALJ, the ALJ's findings in this case were well within the zone of reasonable choices. *See McClanahan v. Comm'r of* Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006). Accordingly, substantial evidence supports the ALJ's RFC determination and his decision that Plaintiff's impairments were not disabling. *See Longworth v. Comm'r of Soc. Sec*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| SHELLY DEVERS, | Case No. 1:19-cv-1013 |
|     Plaintiff, | Cole, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
|     Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).